```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF ALABAMA
                     SOUTHERN DIVISION


LEE E. DAVISON,                  :
                                 :
     Plaintiff,                  :
                                 :
v.                               :   CIVIL ACTION 07-0834-M
                                 :
MICHAEL J. ASTRUE,               :
Commissioner of                  :
Social Security,                 :
                                 :
     Defendant.                  :
```

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied claims for disability insurance benefits and Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 12, 14). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 21). Oral argument was waived in this action (Doc. 20). Upon consideration of the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED.**

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Ser-

vices, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the most recent administrative hearing, Plaintiff was forty-six years old, had completed a high school education (Tr. 512), and had previous work experience as a heavy equipment operator, a concrete pourer, and a furniture maker (Tr. 512-13).  In claiming benefits, Plaintiff alleges disability due to systemic sclerosis, Reynaud's Syndrome, hypertension, and left knee degenerative arthritis (Doc. 14).

The Plaintiff filed protective applications for disability benefits and SSI on December 15, 2004 (Tr. 60-67).  Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that although he would not be able to perform his past relevant work, Davison was capable of performing some light work such as a surveillance system monitor (Tr. 9-25).  Plaintiff requested review of the hearing decision (Tr. 8) by the Appeals Council, but it was denied (Tr. 4-5).

Plaintiff claims that the opinion of the ALJ is not

supported by substantial evidence.  Specifically, Davison alleges that the ALJ did not accord appropriate weight to the opinions and conclusions of his treating physician (Doc. 12).  Defendant has responded to—and denies—these claims (Doc. 15).

Plaintiff's lone claim is that the ALJ did not accord proper legal weight to the opinions, diagnoses and medical evidence of Plaintiff's treating physician.  Specifically, Davison questions the ALJ's rejection of the conclusions of Dr. Robert Howard (Doc. 12).  It should be noted that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."  *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[1] *see also* 20 C.F.R. § 404.1527 (2007).  The relevant medical evidence of record follows.[2]

Davison was admitted to Atmore Community Hospital on September 26, 2004, for two nights, after falling from a tree (Tr. 134-37).  Plaintiff was noted to have multiple contusions of the chest, right flank, abdomen, and hip.  It was further noted

---

[1] The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

[2] Plaintiff has asserted that his disability began on December 1, 2004 (Tr. 61, 64), so records predating his onset date will not be, necessarily, summarized herein.  The Court further notes that records which are not specifically relevant to the particular claim raised will not be summarized either.

that Davison suffered from hematuria, anemia, hypertension, and hypokalemia and that he was admitted to the hospital with a blood alcohol level of .273.

Plaintiff was seen at the Bay Minette Family Practice on December 15, 2004 for cellulitis of his fingers (Tr. 392-95).

Records from the Department of Veteran Affairs show that, on December 16, 2004, Davison stated that he had two fingers on his right hand and one finger on his left hand that were hurting him, stating that his pain was nine on a ten-point scale; he further indicated, though, that a level of nine was tolerable (Tr. 143-47, 184;[3] *see generally* Tr. 138-216).  Plaintiff's blood pressure that day was 192/96.  Davison was told, on December 16, 2004, that he needed to limit salt and fat in his diet because of his hypertension; he was further encouraged to exercise regularly, limit his alcohol intake, and quit smoking.  The notes indicate that Plaintiff's hypertension was out of control because he was non-compliant.  The doctor diagnosed him to suffer from paronychia;[4] the physician prescribed keflex[5] and excused Davison from work for seven days.

Records from the Veterans Administration (hereinafter *VA*)

---

[3]These records are also repeated at Tr. 252-56.

[4]Paronychia is a skin infection that occurs around the nails. *See* http://www.nlm.nih.gov/medlineplus/ency/article/001444.htm

[5]*Keflex* is used for the treatment of various infections. *Physician's Desk Reference* 854-56 (52nd ed. 1998).

4

reveal that Plaintiff was examined on January 12, 2005 for further complaints of finger pain; Davison said that his pain was ten on a ten-point scale, but that ten was a tolerable level of pain (Tr. 221, 248-50;[6] see generally Tr. 217-82).  The doctor noted tenderness in three fingers, diagnosed traumatic finger pain, and prescribed darvocet[7] and a topical analgesic cream.  It was noted that Davison's hypertension was out of control due to non-compliance.

Records from the Pensacola VA show that, on February 17, 2005, Plaintiff was seen regarding complaints of pain in his hands; Davison stated that his pain was ten (Tr. 373-80; see generally Tr. 324-87).  Plaintiff was counseled to quit smoking, exercise regularly, and limit salt, fat, and alcohol.[8]  The doctor noted that Plaintiff had a chronic history of Reynaud's and was non-compliant with a hypertension regimen.  It was noted that Plaintiff was in no acute distress; it was recommended that he continue with his pain medication and see Dr. Howard, a rheumatologist.

On March 23, 2005, a consultative examination was performed

---

[6]These records are also repeated at Tr. 319-21.

[7]Propoxyphene napsylate, more commonly known as Darvocet, is a class four narcotic used "for the relief of mild to moderate pain" which commonly causes dizziness and sedation.  *Physician's Desk Reference* 1443-44 (52nd ed. 1998).

[8]These instructions were given most every time Plaintiff went to the VA, so the Court will not add them into the summary for each examination.

by Dr. Jill Hall who found Plaintiff to be oriented to time, person, place, and situation (Tr. 283-88).  The Psychologist noted no loose associations, tangential thinking, or confusion; his insight was fair.  Hall's diagnosis was posttraumatic stress disorder and she noted that the prognosis was fair; it was her opinion that, psychologically, Davison would be able to handle the pressures of work.

On April 8, 2005, Plaintiff was seen by Dr. Robert F. Howard who noted, initially, that he was in no acute distress (Tr. 370-73).  Howard noted normal strength in the lower and upper extremities; he noted mild grey discoloration under the nails of the middle fingers of both hands.  Davison had full passive range of motion (hereinafter *ROM*) in his neck and full ROM in the ankles, knees, hips, wrists, and elbows; there was full active ROM in the shoulders with the exception of decreased external rotation.  Radiological testing showed that Plaintiff's hands were both normal and that he had no significant cardiopulmonary disease.  Howard's diagnosis was systemic lupus erythematosus.  Twelve days later, a doctor instructed Davison to apply isopropyl alcohol once or twice daily to the tip of his left third finger for infection (Tr. 370).

On April 21, 2005, Dr. Abdel Hakim Kasmia performed a physical examination, noting that Plaintiff would not allow him to examine his feet or knees (Tr. 303-05).  Dr. Kasmia stated

that "[t]he only objective finding in today's limited examination is the evidence of Reynolds phenomena [sic] involving his hands. Other than that everything else is subjective" (Tr. 305).

On May 5, 2005, Plaintiff was again seen by Dr. Howard for chest fluttering and painful fingers (Tr. 365-70). The doctor's assessment was CREST variant of systemic sclerosis (Reynaud's esophageal dysmotility and sclerodactyly), with anti-centromere antibody, digital ulcers, and dysphagia. Dr. Howard recommended a holter monitor and echocardiogram to evaluate palpitations with a follow-up visit in one month. The echocardiogram was normal (Tr. 365). On June 14, 2005, Plaintiff underwent a CT of the lungs which showed no evidence of fibrosis, active interstitial lung disease, or active pneumonia; the vascular markings were within normal limits (Tr. 386).

On June 17, 2005, Davison was seen by Dr. Rommel B. Singh, at the VA, who noted tenderness and swelling in several of his fingers; Plaintiff complained of pain at a level ten on a ten-point scale though ten was tolerable (Tr. 360-64). The doctor noted that Plaintiff was non-compliant with his hypertension regimen (he had not taken his medication that day), but prescribed Darvocet and continued the Lortab[9] prescription.

On September 9, 2005, Dr. Robert Howard, wrote the following

---

[9]*Lortab* is a semisynthetic narcotic analgesic used for "the relief of moderate to moderately severe pain." *Physician's Desk Reference* 2926-27 (52nd ed. 1998).

"To whom it may concern" note:  "Mr. Davidson [sic] has a disabling medical condition (scleroderma; also known as systemic sclerosis).  He [sic] condition is not expected to significantly improve.  Please assist with disability and food stamps" (Tr. 322).

Plaintiff was seen on December 20, 2005 by Dr. Howard who noted Davison's elevated blood pressure, giving him several medications to bring it down (Tr. 355-57).  On examination, the doctor noted the following:  Plaintiff was in no apparent distress and had good air movement in his lungs; his heart sounds were normal; he had epigastric tenderness; and neurologically, his strength was normal and symmetrical in the upper and lower extremities.  A chest x-ray showed a normal-sized heart and clear lungs (Tr. 383).

On January 11, 2006, Davison was seen by Dr. Howard who found him to be in no apparent distress (Tr. 351-54).  Plaintiff reported no pain on this date (Tr. 352).  The doctor found Davison to be anemic and instructed him to avoid strenuous activity.  Dr. Howard wrote another "To whom it may concern" noted which stated that "Davidson [sic] has CREST syndrome which is a type of scleroderma.  Scleroderma is also known as systemic sclerosis" (Tr. 323).

On January 30, 2006, Plaintiff was seen by Dr. Singh for a routine visit (Tr. 424-27).  Davison stated that his pain level

was six on a ten-point scale; the pain was in his fingers.  Singh found him to be in no apparent distress, though he did note tenderness in two of his fingers; he continued the prescriptions for Lortab and Darvocet.  On February 15, 2006, Plaintiff was measured for knee high compression stockings and instructed in their use (Tr. 423-24).

Dr. Howard examined Plaintiff on February 28, finding him to be in no apparent distress, but experiencing high blood pressure (Tr. 420-23).  The doctor referred Davison to a diabetic clinic.  On March 23 and May 31, Dr. Howard noted that Plaintiff's hypertension was out of control (Tr. 416-20).

On November 27, 2006, Davison was seen for sinus congestion and finger pain which was at a level of four (Tr. 442-446).  He was noted to have finger tenderness and diagnosed to have allergic rhinitis for which a prescription was written.

On December 19, Dr. Howard saw Plaintiff for a regularly-scheduled examination; Davison said that his fingers were a little better (Tr. 479-81).  The doctor noted that Plaintiff's hypertension was not adequately controlled, that he still suffered from the CREST variant of scleroderma, and that he had iron deficient anemia.

An echocardiogram performed on April 2, 2007 demonstrated no evidence of pulmonary hypertension, mild mitral regurgitation, and left ventricular hypertrophy (Doc. 478).  Plaintiff's blood

pressure was noted to be very elevated on that same date; this was thought to be because of non-compliance (Tr. 475-77).  On April 20, Davison stated that his finger pain was seven on a ten-point scale and that he had been depressed; his blood pressure was elevated (Tr. 469-74).  The doctor noted that Plaintiff was in no apparent distress, though there was tenderness in two of his fingers.

The following evidence was submitted following the ALJ's decision.  On April 26, 2007, Dr. Howard completed a Residual Functional Capacity Questionnaire in which he indicated that Davison could sit for four, stand for four, walk for one, and work for zero hours during an eight-hour day (Tr. 488-91).  Howard stated that Plaintiff could never lift or carry any amount of weight.  The doctor further stated that Davison could never crawl, climb, or crouch and could bend, squat, reach above, stoop, and kneel only occasionally.  Plaintiff was seen at the VA on April 27, 2007 to have his blood pressure checked; it was marginally elevated (Tr. 482-87).  This concludes all of the relevant medical evidence of record

The ALJ accorded no weight to Dr. Howard's opinion that Plaintiff was disabled (Tr. 20).  The ALJ rejected this conclusion because it was conclusory, inconsistent with his own treatment notes and the medical evidence presented by the other physicians, and "the course of treatment pursued by Dr. Howard

ha[d] not been consistent with what one would expect if the claimant were truly disabled" (Tr. 20).

The Court finds substantial support for the ALJ's conclusions.  Dr. Howard's notes routinely state that Davison is in no apparent distress as do the records from most examinations in this record.  In the only evaluation Howard completed in which he measured Plaintiff's ranges of motion (on April 8, 2005), Plaintiff was fully able to use all extremities and joints, with only a slight deficiency in his shoulders (Tr. 370-73).  Moreover, the doctor's treatment does not reflect an individual capable of no work.  While the Court understands that Plaintiff's diagnosis portends impairments which are severe, the medical evidence of record fails to support the extreme limitations Dr. Howard indicates.  Davison's claim otherwise is without merit.

Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, see *Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**.  Judgment will be entered by separate Order.

DONE this 12th day of June, 2008.

                                              s/BERT W. MILLING, JR.
                                              UNITED STATES MAGISTRATE JUDGE